IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ADEN Y. JELEY,**

    **Plaintiff,**

                                  Civil Action 2:19-cv-3107
    v.                            Judge Sarah D. Morrison
                                  Chief Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Aden Y. Jeley, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

1

## I.  BACKGROUND

Plaintiff protectively filed his application for benefits on June 30, 2013, alleging that he has been disabled since January 1, 2010. (R. at 113.) Plaintiff's application was denied initially and upon reconsideration. He requested a hearing before an administrative law judge ("ALJ"). (R. at 86–88, 94–101.) After presiding over a hearing on June 24, 2016, ALJ Jason C. Earnhart issued a decision on August 12, 2015, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 11–31, 32–57.) The Appeals Council denied Plaintiff's request for review and Plaintiff sought judicial review in this Court. (R. at 1–4.) The Court reversed the Commissioner's decision and remanded the case to the agency for further proceedings. (R. at 632–46.) The Appeals Council then remanded the case to a new ALJ. (R. at 647–49; *see also Jeley v. Comm'r of Soc. Sec.*, Case No. 2:17-cv-396.)

ALJ Noceeba Southern held a hearing on March 8, 2019, and on April 12, 2019, issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 529–50, 580–603.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II.   RELEVANT RECORD EVIDENCE

### A.   Relevant Medical History and Records

1. Dr. Andrea Polesky

Dr. Andrea Polesky first examined Plaintiff at a refugee clinic in California in April 2013. (R. at 245.) She described Plaintiff's history as follows:

> The patient was born in Somalia. He[] is married and has seven children, ages 6 to 16. He comes from the Daroud tribe. He was a nomad and his job was to raise camels. He

>has substantial exposure to unpasteurized camel milk.  He has no education and is illiterate.  He had to leave Somalia because Al Shabab was randomly killing men and so he left his family behind.  He traveled to South Africa through Tanzania, Kenya, Zambia, and Zimbabwe, mostly in cars and trucks.  In South Africa he was shot in the middle of a robbery. He has been incarcerated in the United States for a fight.

(*Id.*)

Dr. Polesky found that, among other things, Plaintiff had "urinary frequency and nocturia/urinary tract infection." (R. at 246.) In May 2013, Dr. Polesky prepared a medical source statement in which she stated that Plaintiff suffered from urinary frequency and frequent recurring urinary tract infections. (R. at 209.) This medical source statement also included limitations related to Plaintiff's ability to sit, walk, and lift during the workday. (R. at 208.)

    2. Dr. Rodney Swearingen

In December 2013, Dr. Rodney Swearingen performed a mental consultative examination at the request of the Social Security Administration. (R. at 308–14.) Plaintiff reported to Dr. Swearingen that his daily activities consisted of waking up and walking places all day long. (R. at 310.) His roommate does the cleaning, cooking, and shopping. (*Id.*) Dr. Swearingen noted that Plaintiff is unable to read, write, spell, or do arithmetic in English, but reported that Plaintiff refused to answer the physician's questions about his skills in Somalian. (*Id.*) Dr. Swearingen described Plaintiff as displaying "no perseveration, flight of ideas, or poverty of speech" with a well-organized quality of associations. (R. at 311.) Plaintiff's word knowledge, abstract reasoning, and social comprehension were poor but his concentration and persistence on task were both good. (*Id.*)

Dr. Swearingen diagnosed Plaintiff with PTSD, depression disorder, and cognitive disorder. (R. at 312.) Dr. Swearingen opined that Plaintiff would be functionally limited in multiple areas, including that he would be expected to suffer from limits in understanding, remembering, and carrying out instructions, responding appropriately to supervisors and coworkers, and responding appropriately to stress and work pressures. (*Id*.) He further opined that Plaintiff would be significantly limited in his ability to complete complex or multi-step instructions or understand written instructions. (*Id.*) He noted that Plaintiff was "not very interactive" and that the interpreter "had difficulty getting him to respond and be cooperative." (*Id.*)

      3. <u>Other Relevant Medical Records</u>

Plaintiff was treated at United Urgent Care in Columbus, Ohio, on September 28, 2013, for complaints of burning with urination and abdominal pain. (R. at 379.) The treating physical noted Plaintiff's recurrent urinary tract infections and urinalysis were consistent with an infection on that day. (*Id*.).

Nephrologist Dr. Tameem Kaka examined Plaintiff on July 9, 2014. (R. at 327–28.) Dr. Kaka described Plaintiff as experiencing "recurrent urinary tract infection, urinary tract infection, site not specified-chronic." (R. at 327.) Plaintiff complained of intermittent painful or difficult urination but did not have an infection that day. (R. at 329.)

Dr. Nur Badshah began treating Plaintiff beginning in February 2014, for chronic urine urgency, among other conditions. (R. at 525.) Dr. Badshah found Plaintiff incapable of sustaining full-time physical work. (R. at 316, 318.)

    **B.**    **Plaintiff's Testimony**

4

At the administrative hearing on March 8, 2019, Plaintiff testified that he experiences back pain that shoots through his legs and that he is considering surgery but is concerned about the effect surgery may have on his bladder control. (R. at 562–63.) He testified that he cannot control his bladder and that he needs to use the bathroom between ten and fifteen times daily and that each trip can last up to ten minutes. (R. at 563.) When asked about frequency by the ALJ, Plaintiff reported that he needs to use the restroom every 15 to 16 minutes, but that during the hearing he only needed to use the restroom once because he limited his eating and drinking the day before. (R. at 566.) Plaintiff said that he does not wear an adult diaper. (*Id.*)

Plaintiff testified that he experiences memory loss that on some days causes him to forget to take his medication. (R. at 565.) He reported being unable to concentrate on watching TV or listening to the radio due to his pain. (*Id.*)

### III.  ADMINISTRATIVE DECISION

On April 12, 2019, the ALJ issued her decision. (R. at 529–550.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

gainful activity since June 30, 2013, the application date. (R. at 532.) The ALJ found that Plaintiff has the following severe impairments: degenerative disc and joint disease of the spine, kidney disease with right kidney atrophy secondary to a remote gunshot wound and urinary tract infection, abdominal hernias, history of tuberculosis and allergies, posttraumatic stress disorder ("PTSD") and depressive disorder. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 534.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could frequently push/pull, and reach with the bilateral upper extremities. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. He could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. He could have no more than frequent exposure to extreme odors, dusts, fumes, gases, and/or heat, cold, humidity, and wetness. The claimant could have occasional interaction with coworkers and supervisors, but should avoid interaction with the public. He could perform simple routine tasks. The claimant would need to go to the restroom every two hours and would be off task 8 percent of the day due to restroom breaks. He could have occasional decision making and any changes would need to be well explained. Further, the claimant could not perform at a fast pace or with strict production quotas.

(R. at 536.)

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

6

The ALJ found that Plaintiff does not have any past relevant work but concluded that, considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 549.) She therefore concluded that Plaintiff has not been disabled under the Social Security Act since June 30, 2013, the date his application was filed.  (R. at 550.)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

Plaintiff puts forth two assignments of error.  First, Plaintiff asserts that the RFC determination is not supported by substantial evidence as it relates to Plaintiff's recurrent urinary tract infections.  (ECF No. 13, at 5–7.)  Second, Plaintiff asserts that the ALJ erred in classifying Plaintiff's cognitive impairment as non-severe.  (*Id.* at 7–10.)  The Undersigned addresses each argument in turn.

### A.  RFC Determination

In his first assignment of error, Plaintiff argues that the RFC determination is not supported by substantial evidence because it contains vague and arbitrary limitations related to Plaintiff's impairment of recurrent urinary tract infections.  (ECF No. 13 at 5.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v.*

8

*Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

"While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner."  *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)).  Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."  *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-

2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at 198.)

Here, the ALJ set forth Plaintiff's RFC as follows:

[T]he claimant has the residual functional capacity to perform light work as denied in 20 CFR 416.967(b) except the claimant could frequently push/pull, and reach with the bilateral upper extremities.  The claimant could occasionally balance, stoop, kneel, crouch, and crawl.  He could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds.  He could have no more than frequent exposure to extreme odors, dusts, fumes, gases, and/or heat, cold, humidity, and wetness.  The claimant could have occasional interaction with coworkers and supervisors, but should avoid interaction with the public.  He could perform simple routine tasks.  *The claimant would need to go to the restroom every two hours and would be off task 8 percent of the day due to restroom breaks.*  He could have occasional decision making and any changes would need to be well explained.  Further, he claimant could not perform at a fast pace or with strict production quotas.

(R. at 536) (emphasis added).

In explaining the designated RFC, the ALJ noted that Plaintiff has recurrent urinary tract infections and that, during the hearing, Plaintiff testified to needing to use the restroom up to 15 times in a 24-hour span and that he occasionally has an accident if he attempts to hold his bladder. (R. at 537.)  The ALJ concluded that Plaintiff's medical impairments, including his urinary impairment and others, could be expected to cause symptoms but that Plaintiff's statements on the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the record evidence. (R. at 538.)  Even so, the ALJ included a limitation related to Plaintiff's urinary impairment in the RFC, limiting Plaintiff to light work in an environment where he could use the restroom every two hours and be off-task 8% of the day due to restroom breaks.  (R. at 536.)

In support of her limitation regarding Plaintiff's recurrent urinary tract infections and frequent urination, the ALJ explained as follows:

> The claimant reported intermittent symptoms of urinary frequency and urgency, with nocturia, and dysuria. The claimant was noted at times to have urinary incontinence. The claimant experienced urinary tract infection. In April 2013, the claimant reported urinary frequency and nocturia and the record supported history of schistosomiasis with urinary tract infection. Historically, the record supported the claimant underwent a prior exploratory laparotomy. CT imaging in 2013 showed atrophic right kidney without stones and the claimant underwent additional uroflow testing which showed very *normal* results. Treatment records from 2014 showed stage II mild kidney disease with recurrent urinary tract infections. . . . While the claimant reported constant urinary urgency and frequency, the record supports there were times when the claimant admitted no hematuria, nocturia, urgency, frequency, and incontinence. The claimant's reported urinary symptoms were intermittent and associated with recurrent urinary tract infections, such as burning with urination. He noted improvement in symptoms when started on medication, including Ditropan. . . . While the claimant reported issues with his bladder, the record documented his bladder was normal. In 2017, the claimant reported urinary retention and hesitancy, for which he was prescribed Flomax and then reported subsequent symptoms of urinary frequency. In November 2017, the claimant evidenced no bladder incontinence or urgency.
>
> While the claimant reported he required frequent bathroom use, up to 15 times per day, it should be noted he did also admit he could control his use via drinking and eating. For example, he noted that he limited his drinking and eating, resulting in only needing one bathroom break during the entire time he presented for his disability hearing. Further, while he reported some urinary accidents, he did not report such accidents to treatment providers on any routine or consistent basis and did not require the use of adult protective undergarments. Additionally, any urinary urgency or frequency did not prevent him from leaving his home.

R. at 540–41, citing R. at 212, 214, 217, 246, 279, 308–314, 327, 329, 784, 790, 797, 954, 1072–73, 1086, 1147, 1185 (original citations omitted; emphasis in original).

Plaintiff contends that the RFC contains vague and arbitrary limitations related to Plaintiff's documented recurrent urinary tract infections. (ECF No. 13 at 5–7.) Plaintiff relies on a 2014 case, in which this Court found that an RFC failed to accommodate a plaintiff's severe urinary incontinence impairment. (*Id.* at 5–6, citing *Sherrill v. Comm'r of Soc. Sec.*, No. 1:13-

11

cv-276 (S.D. Ohio, April 2, 2014).)  In that case, the RFC contained a limitation related to the plaintiff's urinary incontinence—that the workplace environment must have a "readily available bathroom facility."  *Id.* at *7.  This Court concluded that this limitation was vague because it did not address the frequency or duration of Plaintiff's bathroom breaks.  *Id.*  Plaintiff asserts that, like in *Sherrill*, the RFC limitation here is vague and constitutes reversible error.  (ECF No. 13 at 7.)

The Undersigned finds this case distinguishable from *Sherrill* because the ALJ's RFC *does* address the duration and frequency of Plaintiff's bathroom breaks.  Specifically, the ALJ concluded that Plaintiff would need the ability to use the restroom every two hours and that these breaks would constitute 8% of the workday.  (R. at 536.)  To the extent Plaintiff argues that the ALJ should have incorporated more restrictions in this RFC based on this impairment, he has failed to adduce any evidence that the impairments required further specific work-related limitations.  As the Sixth Circuit has noted, evidence of a diagnoses does not say anything about the severity of an impairment.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that the "mere diagnosis of [the condition] . . . says nothing about the severity of the condition") (internal citation omitted).

Substantial evidence supports the ALJ's conclusion regarding the medical evidence relating to Plaintiff's recurrent urinary tract infections.  While several medical records point to Plaintiff's urinary incontinence and frequent urinary tract infections, Plaintiff has not identified a medical recommendation for a specific work limitation related to Plaintiff's need for bathroom breaks.  Plaintiff testified that he uses the restroom up to 15 times per day, but he did

acknowledge that he could control this based on eating or drinking. (R. at 563, 566–67.) This record evidence, taken together, supports the ALJ's RFC limitation related to Plaintiff's recurrent urinary tract infections.

The Undersigned finds that substantial evidence demonstrates that the ALJ's assessment of Plaintiff's RFC adequately accounted for all of the limitations that he found credible. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). It is therefore **RECOMMENDED** that Plaintiff's first contention of error based on the RFC determination be **OVERRULED.**

### B. Cognitive Impairment

Plaintiff next contends that the ALJ erred in categorizing his cognitive impairment as non-severe. (ECF No. 13 at 7.) A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability

13

analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). In the Sixth Circuit, "the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d at 862.

Here, the ALJ concluded that Plaintiff's cognitive impairment was non-severe, but that Plaintiff did have several severe impairments. (R. at 532–34.) The ALJ provided the following analysis with respect to Plaintiff's cognitive impairment:

> The record supports the claimant was diagnosed with a cognitive disorder. It should be noted the claimant was diagnosed with the disorder via consultative examination, not via other routine/consistent medical sources in the record. The examiner admitted during his examination of the claimant that he was observed to be uncooperative. The claimant's inability to complete tasks, in part due to his uncooperative behavior, was in part the reasoning for the cognitive disorder diagnosis. Further, it should be noted while the claimant reported he was in a coma and sustained trauma to his head during the same incident in which he sustained his abdominal gunshot wound, the record contains *no* objective documentation to support his subjective statements and accounts. The record does not support the claimant required or was referred for cognitive therapy intervention. The record was devoid of any neurological deficits. Upon exam, the claimant possessed well organized associations. The claimant was observed to possess a poor short term memory, his word knowledge was poor, and his abstract reasoning was poor; however, his concentration and persistence on tasks were both good and his pace of task was average. During his assessment, he reported he was not mentally sick. The claimant was able to obtain government benefits, including food stamps and a medical card. The claimant was able to obtain medical care when required. He could leave his home unaccompanied and return home suggest[ing] he was able to navigate his neighborhood and community and did not experience any significant confusion that would result in getting lost. The claimant did receive some home health assistance; however, his physician eventually noted the assistance was for his back symptoms.

14

> Further, while he reported poor memory and cognitive issues, he was able to recite his medical treatment and ongoing symptoms during two separate hearing proceedings. Additionally, treatment notes describe the claimant as normal and alert, cooperative, with normal mood, memory, affect, and judgment. The claimant was able to live independently. As noted the claimant was not referred for any cognitive therapy or treatment interventions.

R. at 533–34, citing 308–14, 561–69, 1094 (original citations omitted; emphasis in original). The ALJ concluded that the record evidence showed that Plaintiff's cognitive impairment did not have more than minimal limitations on Plaintiff's ability to perform work-related activities. (R. at 534.) Importantly, the ALJ *did* find that Plaintiff had several severe impairments and therefore went on to analyze Plaintiff's residual functional capacity. (R. at 532, 536.)

The Undersigned finds no error in the ALJ's conclusion that the record does not support a finding that Plaintiff's cognitive impairment was severe. Moreover, because the ALJ found that Plaintiff had other severe impairments, his determination that the cognitive disorder was non-severe is of little consequence. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where the ALJ found that the claimant had a severe impairment, "[t]he fact that some of [claimant's] impairments were not deemed to be severe at step two is [] legally irrelevant."). Where, as here, the ALJ determines that a claimant has a severe impairment at step two of the analysis, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x. 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe").

Plaintiff asserts that the ALJ did not consider Plaintiff's cognitive impairment in formulating her RFC and that this constitutes legal error for which the case should be remanded. (ECF No. 13 at 9–10.) The Undersigned finds that, while the ALJ's primary analysis of Plaintiff's cognitive impairment was contained in step 2 of the sequential process, the ALJ explicitly incorporated this analysis by reference to her RFC analysis. (R. at 548, explaining that "it should be noted while the consultants found a severe organic mental disorder, the undersigned finds the record supported a cognitive disorder diagnosis, but for the reasons above did not find the record objective supported severe limitations".)

The Sixth Circuit has made clear that an ALJ's decision must be read as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (explaining that an ALJ's decision must be read as a whole). Accordingly, although the ALJ's primary analysis of Plaintiff's cognitive impairment is not in the section of the decision articulating Plaintiff's RFC, her discussion at step two demonstrates that she reasonably considered whether this impairment caused functional limitations and concluded that it did not. (*See* R. at 533–34.) In so concluding, the ALJ thoroughly considered Plaintiff's medical records, treatment history (and lack of treatment history), the opinion evidence, and Plaintiff's own testimony. (*Id.*)

Substantial evidence supports these conclusions. Dr. Swearingen, the consultative examiner, did diagnosis Plaintiff with a cognitive impairment, but Plaintiff's other medical records do not contain this diagnosis. (R. at 312.) Dr. Swearingen noted that Plaintiff was not entirely cooperative during his exam and concluded that Plaintiff's inability to complete cognitive tasks in the exam was partially due to this lack of cooperation. (R. at 310–12.) The

16

medical record shows that Plaintiff's concentration and persistence were good and that his pace was average, though poor short-term memory, word knowledge, and abstract reasoning were noted.  (R. at 311.)  In December 2014, the record shows that Plaintiff submitted a completed background questionnaire in which he was able to provide information about his work, education, and family history, even though during his visit with Dr. Swearingen, he did not provide these details.  (R. at 186–88.)

The fact that Plaintiff was diagnosed with a cognitive impairment does not necessarily mean that this condition imposes work-related limitations.  *See Higgs,* 880 F.3d at 863 (mere diagnosis of an impairment does not establish the condition is disabling); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929–30 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time.").  An ALJ need only include limitations arising from an impairment if it affects a claimant's capacity to work.  *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.  A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal quotation marks and citations omitted).

The Undersigned finds no legal error where, as here, the ALJ reasonably determined that a particular impairment was not severe and went on to consider that impairment as part of the sequential process.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.

17

1987) (when an ALJ finds that a claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error).

Based on the foregoing, the Undersigned concludes that the ALJ properly considered Plaintiff's cognitive impairment and reasonably concluded that limitations attributable to this impairment was not warranted in the RFC. The ALJ explained his rationale for finding that Plaintiff's cognitive disorder did not cause any additional functional limitations, which included consideration of Plaintiff's allegations and hearing testimony; treatment records; conservative treatment history; and Plaintiff's activities. (*See* R. at 533–34, 536, 548.) The Undersigned therefore concludes that the ALJ properly considered Plaintiff's cognitive impairment in assessing his RFC and that substantial evidence supports the ALJ's decision to omit limitations attributable to this impairment. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:   August 6, 2020**            */s/ Elizabeth A. Preston Deavers*_____
                                                          **ELIZABETH A. PRESTON DEAVERS**
                                                          **CHIEF UNITED STATES MAGISTRATE JUDGE**