## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ADEN Y. JELEY,**

             **Plaintiff,**

                                  :

    **v.**                                     **Case No. 2:19-cv-3107**
                                              **JUDGE EDMUND A. SARGUS, JR.**
                                              **Chief Magistrate Judge Elizabeth A.**

**COMMISSIONER OF SOCIAL**           **Preston Deavers**
**SECURITY,**

                                  :

             **Defendant.**

### OPINION AND ORDER

Aden Y. Jeley ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security supplemental security income benefits. Plaintiff filed his Statement of Errors on November 15, 2019. (Statement of Errors, ECF No. 13.) The Commissioner filed a Memorandum in Opposition. (Mem. in Opp'n, ECF No. 18.) On August 6, 2020, the Magistrate Judge Deavers issued a Report and Recommendation, recommending that the Court affirm the Commissioner's denial of benefits. (R&R, ECF No. 20.) Plaintiff timely filed Objections to the Magistrate Judge's Report and Recommendation (Objs., ECF No. 21), and the Commissioner filed a Response (Resp., ECF No. 22). For the reasons set forth below, the Court **OVERRULES** Plaintiffs' objections, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

This case has a lengthy procedural history. Plaintiff first filed an application for supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on June 30, 2013. (Admin. Record ("R."), 64, ECF No. 12.) Plaintiff's application was denied initially and upon reconsideration. (*Id.* at 86–88, 97–98.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 99.) After the hearing, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 12–34.) The Appeals Council declined to review the ALJ's decision, and Plaintiff filed an action in this Court. The Court remanded Plaintiff's case to the Commissions for further proceedings consistent with its findings. *See Jeley v. Comm'r of Soc. Sec.*, No. 2:17-cv-396, 2018 WL 286169 (S.D. Ohio Jan. 4, 2018), *report and recommendation adopted*, 2018 WL 2063870 (S.D. Ohio May 3, 2018).

An ALJ conducted a second hearing, at which Plaintiff, represented by counsel, appeared and testified with the assistance of an interpreter. (R. at 558–77.) On April 12, 2019, the ALJ issued a decision again finding that Plaintiff was not disabled under the Act. (*Id.* at 526–87.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## B. ALJ Southern's Decision

ALJ Southern issued her decision on April 12, 2019. (*Id*. at 526–87.) At step one of the

sequential evaluation process, [1] ALJ Southern found that Plaintiff had not engaged in substantial

gainful activity since June 30, 2013 (the date of Plaintiff's application). (*Id*. at 532.) At step two,

ALJ Southern found that Plaintiff has the following severe impairments:

> degenerative disc and joint disease of the spine; kidney disease with right kidney
> atrophy secondary to a remote gunshot wound and intermittent urinary tract
> infection; abdominal hernias; history of tuberculosis and allergies; a posttraumatic
> stress disorder (PTSD), and a depressive disorder.

(*Id*. (internal citation omitted).) ALJ Southern further found that Plaintiff suffered from "the

following nonsevere impairments: a history of cognitive impairment; facial cellulitis;

hypertension; gastroesophageal reflux disease; headaches; and thyroid nodule." (*Id*.) As to her

conclusion that Plaintiff's history of cognitive impairment constituted a "nonsevere impairment,"

the ALJ provided the following lengthy explanation:

> At hearing, the representative reported the claimant experienced cognitive limits
> due to a cognitive impairment. The record supports the claimant was diagnosed
> with a cognitive disorder. It should be noted the claimant was diagnosed with the
> disorder via consultative examination, not via other routine/consistent medical
> sources in the record. The examiner admitted during his examination of the
> claimant that he was observed to be uncooperative. The claimant's inability to

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a
dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727,
730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria
   of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R.
   Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or
   her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional
   capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir.
2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

complete tasks, in part due to his uncooperative behavior, was in part the reasoning for the cognitive disorder diagnosis. Further, it should be noted while the claimant reported he was in a coma and sustained trauma to his head during the same incident in which he sustained his abdominal gunshot wound, the record contains no objective documentation to support his subjective statements and accounts. The record does not support the claimant required or was referred for cognitive therapy intervention. The record was devoid of any neurological deficits. Upon exam, the claimant possessed well organized associations. The claimant was observed to possess a poor short term memory, his word knowledge was poor, and his abstract reasoning was poor; however, his concentration and persistence on tasks were both good and his pace of task was average. During his assessment, he reported he was not mentally sick. The claimant was able to obtain government benefits, including food stamps and a medical card. The claimant was able to obtain medical care when required. He could leave his home unaccompanied and return home suggesting he was able to navigate his neighborhood and community and did not experience any significant confusion that would result in getting lost. The claimant did receive some home health assistance; however, his physician eventually noted the assistance was for his back symptoms. Further, while he reported poor memory and cognitive issues, he was able to recite his medical treatment and ongoing symptoms during two separate hearing proceedings.

Additionally, treatment notes describe the claimant as normal and alert, cooperative, with normal mood, memory, affect, and judgment. The claimant was able to live independently. As noted the claimant was not referred for any cognitive therapy or treatment interventions.

Thus, these impairments are not "severe" impairments within the meaning of the Social Security Act and Regulations because there is no evidence that these conditions have more than minimal limitation on the claimant's ability to perform work-related activities.

It should be noted home health documentation issued by the claimant's physician documented a diagnosis of schizophrenia. As set forth in 20 CFR 404.1508 and 416.908, an impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. While the claimant's physician noted the diagnosis, the record was devoid of psychological testing or other objective mental testing evidencing a diagnosis of schizophrenia. Further, the claimant himself did not allege a schizophrenia disorder. The undersigned has considered mental health symptoms under the objectively diagnosed conditions below; however, the undersigned finds the specific schizophrenic condition a nonmedically determinable impairment.

(*Id*. at 533–34.)

4

At step three, ALJ Southern found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 534.) At step four, ALJ Southern set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could frequently push/pull, and reach with the bilateral upper extremities. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. He could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. He could have no more than frequent exposure to extreme odors, dusts, fumes, gases, and/or heat, cold, humidity, and wetness. The claimant could have occasional interaction with coworkers and supervisors, but should avoid interaction with the public. He could perform simple routine tasks. The claimant would need to go to the restroom every two hours and would be off task 8 percent of the day due to restroom breaks. He could have occasional decision making and any changes would need to be well explained. Further, the claimant could not perform at a fast pace or with strict production quotas.

(*Id.* at 536.) In formulating the RFC, ALJ Southern considered Plaintiff's hearing testimony, medical treatment records spanning several years, and a number of medical opinions, including the report and opinion of consultative psychological examiner, Dr. Swearingen. (*Id.* at 536–49.) Specifically with respect to how the assessed RFC accommodates Plaintiff's mental health and cognitive impairments, ALJ Southern explained as follows:

> In addition to his physical conditions, the record supports the claimant was diagnosed with mental health conditions, including PTSD and depression. The claimant reported receiving only conservative medication management from his primary care provider and admitted he received no mental health specific treatment and no counseling/therapy. Thus, the claimant was afforded a mental consultative examination in December 2013. The claimant reported physical health issues were the cause of his disability during his mental exam, suggesting his mental symptoms were not significant. He reported being single and living with a friend. The claimant admitted he had been arrested on one occasion for fighting which required jail. He stated he had no pending charges and did not have issues with authority figures. During the exam, the interpreter had great difficulty getting the claimant to respond and cooperate. He showed poor eye contact, but was appropriately dressed, and when speaking, evidenced normal tone and voice. The claimant possessed normal fine and gross motor skills. He evidenced no flight of ideas or poverty of speech

and his associations were well organized. The claimant reported feelings of withdrawal, noted issues sleeping, reported crying spells, and stated he was depressed in part due to his pain He reported thoughts of death, but there were no active suicidal ideations or homicidal ideations noted. The claimant exhibited psychomotor retardation and agitation and poor energy, but he showed no outward anxiety and he reported no mood swings. The claimant possessed no delusional thinking. He was suspicious of others and reported compulsive behaviors, but did not describe such behaviors. During the exam, his memory was poor and he could not complete serial 7s. His word knowledge was poor and he showed poor abstract reasoning and social comprehension; however, he endorsed that he was okay and not mentally sick.

. . .

The undersigned has read and considered the opinion of Dr. Swearingen . . . . Dr. Swearingen opined the claimant had a GAF score of 53, denoting moderate mental limits. He opined the claimant could understand, remember, and carry out simple instructions, but would have problems with complex tasks; could maintain attention, concentration, persistence, and pace for simple tasks; would have limits in responding appropriately to supervisors and coworkers in a work setting; would have limits responding to pressures and stress in a work setting. Dr. Swearingen was a mental health specialist and examiner who observed the claimant in person. While only on one occasion, he was familiar for evaluating individuals and assessing mental limits, especially as they relate to workplace functionality. Here, the undersigned finds the GAF score less persuasive, as a GAF score is not a determinative measure of disability, is relevant only on the date and time at which it was assessed, and takes into consideration factors not considered during disability determination, such as socioeconomic stressors. The undersigned finds the assessed functional limits generally persuasive as they are largely consistent with the evidence of record supporting some breakthrough symptoms of depression and PTSD, as the claimant reported he feels nervous and anxious when he remembers being beaten up in the past, and has intermittent crying spells due to depression and pain. The undersigned finds the record does not objectively support greater limits than those assessed by the examiner because the record and claimant testimony note he received only conservative medication management by a general practitioner and pursued no mental health specific treatment or counseling with licensed professionals, despite having medical insurance coverage. Further, despite any reported symptoms the claimant required no emergency treatment for acute symptom exacerbation nor was the claimant hospitalized for mental instability. Therefore, overall the undersigned finds Dr. Swearingen's opinions somewhat persuasive and affords it overall some weight.

(Id. at 541–42, 545–46 (internal citations omitted).)

## II.    STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III.    ANALYSIS

In his Statement of Errors, Plaintiff argued that the ALJ's decision should be reversed for two reasons: (1) because the RFC determination was impermissibly vague as to Plaintiff's required bathroom usage and, therefore, not supported by substantial evidence, and (2) because the ALJ erred in classifying Plaintiff's cognitive impairment as a non-severe medically determinable impairment. (*See generally* Statement of Errors.) The Magistrate Judge recommended that both contentions of error be overruled. (*See generally* R&R.) Plaintiff now advances two objections to the R&R: (1) that the ALJ improperly failed to recognize his cognitive impairment as a medically determinable impairment at all, and (2) that the ALJ failed to properly evaluate the opinions of the state agency psychologists. (*See generally*, Objs.) The Court will examine each objection, in turn.

The Magistrate Judge extensively reviewed the ALJ's analysis of the plaintiff's two objections now before the undersigned.  The undersigned concurs with her conclusions.  The

7

ALJ did consider the plaintiff's cognitive impairment.  In addition, the ALJ also considered and evaluated in detail the opinions of the state psychologists.

## IV.    CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objections to the Report and Recommendation of the Magistrate Judge are without merit. The Court, therefore, **OVERRULES** Plaintiff's Objections (ECF No. 21), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 20), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.


**IT IS SO ORDERED.**


s/ Edmund A. Sargus, Jr.
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**